# DISSENTING OPINION

No. 04-09-00397-CV

George **LESIEUR**,
Appellant

v.

Timothy **FRYAR**, Sandra Fryar, Cynthia Morales d/b/a Morales Realty, and Cynthia Gonzales,
Appellees

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 07-07-18515-CV
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:     Marialyn Barnard, Justice
Dissenting opinion by:  Phylis J. Speedlin, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed: July 14, 2010

The majority of the court reasons that the two inspection reports, the Adams Report and the NPI Report, say the same thing in different words, and therefore concludes that Lesieur's own pre-purchase inspection negates the elements of reliance and causation as a matter of law, warranting summary judgment on all of Lesieur's claims. I respectfully disagree because, while the majority correctly recites the applicable standard of review for a traditional summary judgment, it misapplies the standard to the evidence in this case.

To be entitled to a traditional summary judgment, a movant must show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law on a ground expressly stated in its summary judgment motion. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In conducting our *de novo* review of

an order granting a traditional summary judgment motion, we must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the non-movant, in this case in favor of Lesieur. *Id.* at 215-16. I believe the majority's analysis draws evidentiary inferences that favor the movants in reaching its conclusion that there is no disputed issue of material fact.

As more thoroughly described in the majority opinion, after Lesieur moved into his home in 2005, he began noticing signs of foundation problems. Upon discovering that he had not received a prior inspection report obtained by the Fryars in 2002, Lesieur brought suit against the Fryars and Morales Realty for fraud, negligence, negligent misrepresentation, DTPA violations, and civil conspiracy. The Fryars and Morales Realty sought summary judgment on several grounds, including that the elements of reliance and causation were negated as a matter of law because Lesieur had obtained his own independent inspection prior to his purchase. The trial court granted summary judgment in favor of the Fryars and Morales Realty. This appeal followed.

In affirming the summary judgment in favor of the Fryars and Morales Realty, the majority frames the relevant issue as "whether the Fryars and Morales Realty knew 'anything more or different' about the foundation based on the Adams Report, which was withheld from Lesieur, than Lesieur did based on his own inspection report." *See Lim v. Lomeli*, No. 04-06-00389-CV, 2007 WL 2428078, at *4 (Tex. App.—San Antonio Nov. 28, 2007, no pet.) (mem. op.) (holding that information from inspection report concerning defect was equally available to buyer, thereby negating causation and reliance as matter of law). After conducting a side-by-side comparison of the "Structural Systems" sections of the two reports, the majority states that "it is evident that the differences between the reports are merely a matter of word usage, not substance," and concludes the NPI Report provided Lesieur with the "same evidence of structural movement" as noted in the

Adams Report.  I respectfully disagree that the differences between the two reports are merely matters of word usage and not substance.  While the language differences are clearly the result of word choice, they also convey a substantive difference in the existing defects found and the level of warning conveyed.

First, the verbiage used in the two inspection reports under "Structural Systems" is significantly different in at least two areas: (i) with regard to "structural movement" of the foundation; and (ii) with regard to a "visibly unlevel" floor.  In the "Foundations" section of the Adams Report, the report received by the Fryars and Morales Realty in 2002, the inspector rendered a "Performance Opinion," expressly stating, "[s]igns of structural movement noted, however, the foundation is supporting the structure at this time."  He listed the evidence of "structural movement" as: (i) cracks in walls and/or ceilings; (ii) door frames out of square; and (iii) cracks in brick/stone veneers.  Clearly, the summary judgment evidence establishes the Adams inspector observed existing structural movement in 2002.  This fact of existing "signs of structural movement" in 2002, along with the inspector's warning that the foundation was supporting the structure "***at this time,***" supports an inference that the structural movement could worsen in the future.

Even the majority agrees that the NPI Report, by contrast, does not contain an express finding of structural movement.  In fact, the "Foundations" section of the 2005 NPI Report states that "no structural cracks were observed around the perimeter."  The report does find "stress cracks" in the floor tile, as well as the grout joints, at the carport area and inside the house in spots.  The NPI Report notes that, "[t]hese types of cracks ***usually reflect*** what is occurring on the slab itself" and "recommend[s] active monitoring" of the foundation.  Comparing the two reports, not only is the wording facially different but the findings in the Adams Report are qualitatively stronger than those

in the NPI Report. The use of the qualifier "usually" in the NPI Report is less affirmative, and provides a weaker warning to the buyer than the Adams Report's more affirmative conclusion that there were existing "signs of structural movement" in the foundation. Further, the NPI report limited its findings of "stress cracks" to only certain areas – the carport and "inside [the] house in spots." These differences alone create a factual issue precluding summary judgment. The majority explains away these substantive differences by finding, without supporting summary judgment evidence, that "cracking in the interior of a home is, axiomatically, the result of movement." The majority then concludes that the NPI observation of "stress cracks" is the equivalent of the Adams observation of "signs of structural movement." This reasoning ignores the NPI statement that there were "no structural cracks" observed around the perimeter. In concluding the reports' findings as to foundation are the same, the majority improperly draws inferences in favor of the movants.

With regard to the "Ceilings and Floor" section of the two reports, the Adams Report states, "the floors are visibly unlevel (front center bedroom)," while the NPI Report makes no mention of an unlevel floor. Instead, the NPI Report merely states that "stress cracks" were observed in the floor tile and grout joints inside the house in various spots. Again, comparing the two reports, not only is the wording facially different, but the Adams findings are substantively different than those in the NPI Report. A warning that the floor is "visibly unlevel" is more significant than that the floor tile has "stress cracks." Despite this express difference between the two reports, the majority concludes that no fact issue exists as to whether the Fryars and Morales Realty knew anything more or different than Lesieur based on the undisclosed Adams Report. The majority infers that, "if a floor was 'visibly unlevel,' he [Lesieur] would have had personal knowledge of it based on his walk-through" of the home prior to his purchase. The majority reaches this conclusion in favor of the

movants despite the lack of summary judgment evidence to support the inference. In fact, to the contrary, in his deposition Lesieur testified that he did a final walk-through of the property before closing, but saw nothing that caused him any "alarm or concern."

The majority bolsters its conclusion that the two inspection reports are the same by noting that neither inspector checked the box requiring immediate repair of the foundation. Accordingly, the majority draws the inference from the absence of a check mark that "neither inspector believed the home's foundation was currently unsound or in a state of disrepair." While both inspectors checked the box showing the foundation had been "Inspected," rather than the box showing the foundation was "Not Functioning or In Need of Repair," there is no summary judgment evidence explaining the criteria used, or the weight to be given to checked or unchecked boxes in the presence of written findings. As discussed *supra*, there are substantive differences in the inspectors' affirmative written findings as to the foundation.

Finally, even if I were to agree that the two inspection reports are the "same," or equivalent, there was additional summary judgment evidence presented as to Lesieur's knowledge and reliance that the majority does not consider. Lesieur's affidavit states he had no knowledge of the prior home inspection by Adams before the closing, and if he had known about the 2002 Adams inspection prior to his purchase he "would have had serious concerns about the condition of the home." Specifically, Lesieur states he "would have had the foundation inspected," and if he had "known the home had foundation problems, [he] would not have purchased it." In addition, in his deposition, Lesieur testified that when he viewed the property with the realtor he noticed "a couple of cracks in the tile," but "figured they were probably moving furniture, that they had dropped the furniture on it and that made it crack," or the cracks were due to "improper laying of the cement beneath the tile." To repair

the cracked tiles, Lesieur agreed the sellers could simply supply replacement tiles. Lesieur testified that he "relied very heavily on the seller's disclosure . . . [which] specified that there was no problem with foundation or interior walls or floors." Lesieur also relied on his own independent inspector, who found no foundation problems. Specifically, Lesieur stated he relied on his inspector's finding that there were "no structural cracks" around the perimeter; he did not have any discussions with the inspector about what he meant by that statement. This additional summary judgment evidence, when viewed in the light most favorable to Lesieur, raises fact issues that (i) Lesieur relied on the sellers' representations there were no foundation problems and no previous inspections, and (ii) if Lesieur had seen the Adams Report, and known about its express finding of "structural movement" in the foundation, he would have acted differently. Lesieur's affidavit and deposition testimony is some evidence that he was assured there were no previous inspections and no existing foundation problems, and he relied on those assurances by the Fryars and Morales Realty in proceeding with the purchase of the property. Other summary judgment evidence shows the Fryars and Morales Realty did have more knowledge than Lesieur prior to the closing because they knew about the prior Adams Report and its findings with regard to structural movement of the foundation. *Cf. Lim*, 2007 WL 2428078, at *4 (holding there was no evidence that the seller knew the home suffered from greater defects than revealed in the inspection reports and withheld such knowledge from the buyers).

In summary, I believe that a material fact question exists on the elements of causation and reliance. Specifically, I disagree with the majority's conclusion that the differences between the two inspection reports are minor, non-substantive differences of word choice that do not raise a disputed fact issue. The finding of "signs of structural movement" in the foundation stated in the Adams Report at least creates a fact question as to whether the first inspection report provided a stronger

warning than the NPI Report which noted only "stress cracks" in the floor tiles and "no structural cracks" around the perimeter. The Adams report finds an existing structural defect in the foundation, although it did not require immediate repair, while the NPI Report affirmatively finds there are "no structural cracks," only stress cracks. Likewise, the observation in the Adams Report that one bedroom had "visibly unlevel" floors at least creates a fact question as to whether that first inspection report was more thorough, or possibly more accurate, than the second report by NPI, which noted only "stress cracks" in the tile floor inside the house and made no mention of unlevel floors. I would hold that the relevant portions of the two inspection reports are sufficiently different, and thus create a fact question as to whether Lesieur had less knowledge than the Fryars and Morales Realty; therefore, the elements of causation and reliance are not negated as a matter of law. Consequently, I would hold the trial court erred in granting summary judgment on that basis.


Phylis J. Speedlin, Justice